UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| BLOUNT COUNTY EMERGENCY ) | | |
| COMMUNICATIONS DISTRICT, *ET AL.*, ) | | |
| ) | | |
|     *Plaintiffs*, ) | DOCKET NO. 1:14-cv-370 | |
| ) | | |
| vs. ) | | |
| ) | Judge Curtis L. Collier | |
| AT&T CORP., ) | | |
| ) | | |
|     *Defendant*. ) | | |

| | | |
|---|---|---|
| BLOUNT COUNTY EMERGENCY ) | | |
| COMMUNICATIONS DISTRICT, *ET AL.*, ) | | |
| ) | | |
|     *Plaintiffs*, ) | DOCKET NO. 1:14-cv-371 | |
| ) | | |
| vs. ) | | |
| ) | Judge Curtis L. Collier | |
| TELEPORT COMMUNICATIONS ) | | |
| AMERICA, LLC, ) | | |
| ) | | |
|     *Defendant*. ) | | |

| | | |
|---|---|---|
| BEDFORD COUNTY EMERGENCY ) | | |
| COMMUNICATIONS DISTRICT, *ET AL.*, ) | | |
| ) | DOCKET NO. 1:14-cv-376 | |
|     *Plaintiffs*, ) | | |
| ) | | |
| vs. ) | Judge Curtis L. Collier | |
| ) | | |
| LEVEL 3 COMMUNICATIONS, LLC, ) | | |
| ) | | |
|     *Defendant*. ) | | |

**M E M O R A N D U M**

Before the Court are a joint motion to dismiss filed by Defendants AT&T Corporation ("AT&T") (Doc. 29 in Case 370)[1] and Teleport Communications America, LLC ("Teleport") (Doc. 28 in Case 371), and a motion to dismiss filed by Defendant Level 3 Communications, LLC ("Level 3") (Doc. 21 in Case 376). The Plaintiff emergency communications districts for various Tennessee counties (the "Districts") filed a joint response in opposition to AT&T's and Teleport's motion (Doc. 32 in Case 370; Doc. 31 in Case 371) and a response in opposition to Level 3's motion (Doc. 23 in Case 376). AT&T and Teleport filed a joint reply (Doc. 33 in Case 370; Doc. 32 in Case 371), and Level 3 filed a reply (Doc. 24 in Case 376). Plaintiffs filed a joint supplemental brief in all three cases (Doc. 62 in Case 370; Doc. 61 in Case 371; Doc. 74 in Case 376), and Defendants responded jointly (Doc. 63 in Case 370; Doc. 62 in Case 371; Doc. 75 in Case 376). The Court will **GRANT IN PART AND DENY IN PART** Defendant's motions (Doc. 29 in Case 370; Doc. 28 in Case 371; Doc. 21 in Case 376).

**I.     BACKGROUND**

In 1984, Tennessee passed the Emergency Communications District Law, Tenn. Code Ann. §§ 7-86-101, *et seq.* (the "911 Law"), to formally establish 911 as the primary emergency telephone number for all Tennessee residents.[2] The 911 Law created the Districts, municipal

---

[1] Depending on the context, the Court cites to the three case files at issue by the last three digits of the case number (*e.g.* "Doc. __ in Case 370") or by the name of the Defendant (*e.g.* "AT&T Doc. __" or "AT&T Compl."). Because all of the briefing on AT&T's and Teleport's motion is joint, the Court generally refers to those briefs only by their reference in the AT&T case.

[2] A sweeping overhaul of the statute became law on April 25, 2014. 911 Funding Modernization and IP Transition Act of 2014, 2014 Tenn. Pub. Acts 795. Numerous statutory provisions were deleted or relocated within the Tennessee Code after the 2014 amendment. This

corporations which run the 911 call centers in each county and route calls to the proper emergency service. To support these functions, the 911 Law allows the Districts to levy a charge (the "911 charge") on telephone lines. Telephone "service suppliers,"[3] such as Defendants, are required to bill and collect these 911 charges from their "service users," or customers.[4] *Id.* Service suppliers must then report and remit the 911 charges to the Districts at least every two months. *Id*.

The Districts brought these actions to recover 911 charges they believe Defendants wrongfully failed to bill to Defendants' respective customers. Each First Amended Complaint asserts causes of action for violation of the Tennessee False Claims Act, Tenn. Code Ann. §§ 4-18-101 *et seq.* (the "TFCA"), violation of the 911 Law, breach of fiduciary duty, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. (Doc. 24 in Case 370; Doc. 23 in Case 371; Doc. 18 in Case 376 (collectively, the "Complaints").)

## II. STANDARD OF REVIEW

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, a court must accept all of the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross &*

---

memorandum refers to the statutory sections as they appeared when the cases were filed.

[3] A "service supplier" is "any person, corporation or entity providing exchange telephone service to any service user . . . ." Tenn. Code Ann. § 7-86-103(15).

[4] A "service user" is "any person, corporation, or entity that is provided 911 service . . . ." Tenn. Code Ann. § 7-86-103(16).

*Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). The court is not, however, bound to accept as true bare assertions of legal conclusions. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 678. Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task." *Id.* at 679.

If a party presents matters outside the pleadings in connection with the motion, the court must either exclude those matters from consideration or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

## III. ANALYSIS

Defendants move to dismiss all six counts of the Complaints on the ground that they fail to plead factual matter sufficient to state a claim under *Twombly*, 550 U.S. 544, and *Iqbal*, 556

U.S. 662. In the alternative, Defendants move to dismiss the fraud-related claims, Counts I, IV, V, and VI, for failure to plead fraud with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.[5] Also in the alternative, Defendants move to dismiss all of the Districts' common-law claims, Counts III–VI,[6] on the grounds that the 911 Law establishes the exclusive remedy for the Districts.

### A. Sufficient Factual Matter

AT&T and Teleport do not make individualized arguments under *Twombly* and *Iqbal* about the adequacy of pleading of the Districts' causes of action or their respective elements. Rather, they assert that all of the Districts' causes of action hinge on the allegation that Defendants underbilled 911 charges, but that the Complaints do not include enough factual allegations to provide plausible support for those "conclusory allegations of underbilling." (AT&T Doc. 30 at 9.) Level 3 takes the same approach, criticizing the Districts' failure to allege how the underbillings occurred, such as by identifying specific illegal practices that led to the underbillings. (Level 3 Doc. 22 at 7, 16–17.) The Court accordingly turns first to the general sufficiency of the Districts' allegations about underbilling.

---

[5] Level 3 also argues that the Districts' claims against it for breach of fiduciary duty are foreclosed by the decision of the Court of Appeals for the Sixth Circuit in *Hamilton County Emergency Communications District v. BellSouth Telecommunications, LLC*, 852 F.3d 521 (6th Cir. 2017). The Court need not consider this argument because the Court will dismiss the fiduciary-duty claims on other grounds.

[6] Both the second and the third count of the Complaint against Teleport—violation of the 911 Law and breach of fiduciary duty, respectively—are labeled as "Count III." (Doc. 23 in Case 371 at 20, 22.) The Court considers the 911-Law count as Count II and the fiduciary-duty count as Count III.

5

Each Complaint includes the following allegations about Defendants' duties to bill, collect, and remit 911 Charges to the Districts, the reports Defendants made to the Districts, and Defendants' alleged failure to collect and accurately report on enough charges:

- The 911 Law required Defendants to bill, collect, and remit 911 charges to the appropriate District "for each line capable of transmitting a voice call to a 911 emergency communications district." (AT&T Compl. ¶ 30; Teleport Compl. ¶ 30; Level 3 Compl. ¶ 40 (each citing Tenn. Code Ann. §§ 7-86-103, -108(c), -110).)

- Defendants provided reports to the Districts, annually and either monthly or bi-monthly, regarding the 911 charges they collected and remitted to the Districts (the "Reports"). (AT&T Compl. ¶¶ 37–38; Teleport Compl. at 10 ¶¶ 37–38[7]; Level 3 Compl. ¶¶ 47–48.)

- Defendants "intentionally billed, collected, reported, and remitted 911 Charges on only a fraction of the lines provided to [their] customers." (AT&T Compl. ¶ 42; Level 3 Compl. ¶ 53 (emphasis omitted); *see also* Teleport Compl. at 11 ¶ 39 ("Defendant intentionally billed, collected, reported, and remitted 911 Charges on only a small fraction of the voice lines or pathways supplied in the counties served by the Districts").

- Defendants "knowingly submitted Reports to each District that contained false records and statements of the number of voice lines that Defendant[s] supplied to customers through multiplexed circuits . . . and single circuit lines in those Districts." (AT&T Compl. ¶ 46; Level 3 Compl. ¶ 57; *see also* Teleport Compl. ¶ 55 ("Defendant knowingly submitted Reports to the Districts that contained false records and statements of the number of voice lines or pathways that Defendant supplied to customers through multiplexed circuits . . . and single circuit lines in those Districts.").)

- "The false records and statements contained in the Reports had the effect of concealing, avoiding, or decreasing an existing legal obligation by Defendant[s] to pay or transmit monies in the form of applicable 911 Charges to each District [or "the Districts"]." (AT&T Compl. ¶ 54; Teleport Compl. ¶ 50; Level 3 Compl. ¶ 65.)

---

[7] The Teleport Complaint labels two sets of paragraphs as numbers 37, 38 and 39. The Court includes page numbers where necessary to avoid ambiguity.

The Complaints also contain specific allegations about the extent of underbilling during certain months, as well as how the Districts know what they think they know about the underbillings: discrepancies between the numbers of lines Defendants included in the Reports and the numbers of lines Defendants included in two other types of reports.

The AT&T and Teleport Complaints compare the Reports to an Automatic Location Information ("ALI") Database. For each line Defendants have in service, Defendants provide telephone number and address information that is collected in the ALI Database. The Districts use the information in the ALI Database to route 911 calls to the appropriate District and to dispatch emergency services to the correct address. (AT&T Compl. ¶¶ 31–32; Teleport Compl. ¶¶ 31–32.[8]) The Districts allege that "[t]he ALI Database includes information about the *lines* that can be used to call 911 Centers, such as those operated by the Districts." (AT&T Compl. ¶ 33; Teleport Compl. ¶¶ 31–32 (emphasis in original).) The Districts allege that the number of lines listed in the ALI Database for given months exceeded the number of lines on which AT&T and Teleport reported 911 charges for those months. The Districts provide specific alleged numbers for one or two "example months" for each District's claims against AT&T and Teleport. As examples of those examples:

- AT&T's October 2012 Report to the Knox County District reported 331 business lines in service, but the ALI Database showed 6,022 total lines in service in Knox County, meaning 5,691 business lines were omitted.[9] (AT&T Compl. ¶ 47(c).)

- Teleport's September 2012 Report to the Blount County District reported 24 business lines in service, but the ALI Database showed 778

---

[8] The Level 3 Complaint also contains allegations about the ALI Database. It does not, however, allege any discrepancies between the Reports and the ALI Database.

[9] The Court notes that these and a number of the other example-month allegations compare business lines to total lines. None of the Defendants argue that this distinction is significant.

total lines in service in Blount County, meaning 754 lines were omitted from the remittance. (Teleport Compl. ¶ 43(a)(i).)

The Level 3 Complaint compares the Reports to "Wireline Activity in Tennessee" reports ("Wireline Activity Reports") Level 3 filed with the Tennessee Regulatory Authority (the "TRA") every month. (Level 3 Compl. ¶ 44.) Wireline Activity Reports "identif[y] the number of switched voice grade equivalent access lines, both residential and business, that [Level 3] has in service in each Tennessee county." (*Id.*) The Districts allege that the number of lines listed in the Wireline Activity Reports for given months exceeded the number of lines on which Level 3 reported 911 charges for those months. The Districts provide specific alleged numbers for one month as to each District as examples of the data discrepancy. As one example of those examples:

- Level 3's January 2012 Report to the Bedford County District reported 42 business lines in service, but the Wireline Activity Report showed 130 business lines in service in Bedford County, meaning 88 lines were omitted from the remittance. (*Id.* ¶ 58(a).)

Defendants characterize all of the foregoing allegations, except the specific monthly examples, as bare assertions of legal conclusions. The Court disagrees. To say a party violated a statute, or entered a conspiracy, are examples of bare assertions of legal conclusions. *See Iqbal*, 556 U.S. at 681 (formulaic recitation of elements of cause of action are conclusory and not entitled to be assumed true). But to say a party did not bill as many charges as it should is not the recitation of an element of a cause of action; it is a factual assertion. A service provider could violate the 911 Law, for example, by failing to bill all the customers it should, or by billing too low an amount, or by collecting payments and not remitting them to the Districts, among other ways. Here, the Districts allege a violation by not billing all the customers Defendants should have billed, and by making false reports to cover that up. "Underbilling" in this context is not a conclusory assertion, but a factual one. It therefore differs from the situation in *Twombly*, where a mere assertion of

8

"parallel conduct" was held to be a conclusory allegation that did not show sufficient facts to state a claim under the Sherman Act, but only because parallel conduct between competitors was itself not legally enough to show the tacit or express agreement necessary to a Sherman Act violation. 550 U.S. at 553–54, 556–57.

Therefore, the Court finds that the Districts have stated a plausible claim for relief even in the absence of the specific monthly examples. *See Iqbal*, 556 U.S. at 679.

As to those specific monthly examples, Defendants argue they compare apples—lines that are billable under the 911 Law—to oranges—phone numbers in the ALI Database or the Wireline Activity Reports. But the allegations in the Complaints do not compare lines and phone numbers; they explicitly compare "lines" as counted by the Reports to "lines" as counted in the ALI Database and Wireline Activity Report. (*See* AT&T Compl. ¶ 47(a)–(c); Teleport Compl. ¶ 43(a)–(d); Level 3 Compl. ¶ 58(a)–(o).) AT&T and Teleport correctly reflect in a footnote in the background section of their joint memorandum that the Districts' allegations in the comparisons are all as to "lines." (AT&T Doc. 30 at 5 n.5.) In their argument section, however, they characterize the comparison as between "lines" and "entries." (AT&T Doc. 30 at 10.)

Defendants may be correct that the definition of "lines" in the 911 Law is different than the meaning of "lines" in the ALI Database and the Wireline Activity Reports. But at this stage, the Court is limited to the operative complaints, and it must take the Districts' factual allegations as true, construing the Complaints in the light most favorable to the Districts. *See Gunasekera*, 551 F.3d at 466. At this stage, the Districts have alleged a discrepancy between the number of lines in the Reports and the number of lines in other sources. As the Court previously held in a set of related cases:

9

> Although Defendant seeks dismissal based on its version of the facts, this cannot be the grounds for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Instead, the Court must accept Plaintiff's allegations in the complaint as true. It may be the case as Defendant argues that Plaintiff's allegations are an "apples-to-oranges" comparison, but that determination is left for a later stage in the litigation.

*Hamilton Cty. Emergency Commc'ns Distr. v. BellSouth Telecomms., LLC*, 890 F. Supp. 2d 862, (E.D. Tenn. 2012) ("*BellSouth I*"), *rev'd on other grounds*, 852 F.3d 521 (6th Cir. 2017) ("*BellSouth II*").[10]

AT&T and Teleport argue that the difference between the ALI Database and the Reports cannot give rise to a plausible inference of wrongdoing based on "common sense and the strength of competing explanations." (AT&T Doc. 33 at 2 (quoting *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)).) The competing explanation to which they point is that lines are defined differently in the 911 Law—and therefore in the Reports—than are the telephone numbers assigned to lines in the ALI Database. But the complaint in *16630 Southfield* failed because it did not allege facts to support an inference of national-discrimination origin where it made only the general assertion of an element of the cause of action—namely that non-minority applicants were treated more favorably. 727 F.3d at 506. As discussed above, the Districts' allegations of underbilling are not mere assertions of an element of a cause of action. In the absence of any asserted facts to support the assertion that non-minority applicants were treated more favorably, *16630 Southfield* discussed the plausible alternative explanation that the lender

---

[10] AT&T and Teleport assert that the Districts have violated a protective order entered in the *BellSouth* cases by referring to reports produced in that litigation and saying the information in those reports will be available to support the Districts' allegations at a later stage. (AT&T Doc. 30 at 14–15; Teleport Doc. 29 at 14–15.) Level 3 asserts the Districts have violated the *BellSouth* protective order by mentioning the existence of the protective order. (Level 3 Doc. 22 at 18 n.5.) The paragraphs of the Complaints which refer to other reports or protective orders do not assert any facts or legal conclusions. They are thus not relevant to the motions to dismiss.

did not renew the loan in question because the borrower had already defaulted once, but also stated that "the mere existence of more likely alternative explanations does not automatically entitle a defendant to dismissal." *Id.* at 505.

Defendants also criticize the discrepancies between the specific monthly numbers the Districts allege now and the numbers alleged in the original complaints. The Districts admit they cannot explain the discrepancies. (AT&T Doc. 32 at 5 n.12.) Level 3 argues the earlier numbers are judicial admissions that are binding on the Districts, and therefore defeat any inference of wrongdoing that might arise from the difference between the Reports and the Wireline Activity Reports. (Level 3 Doc. 22 at 14–15.) AT&T and Teleport argue these discrepancies "add to the implausibility of the Districts' allegations regarding the ALI Database." (AT&T Doc. 30 at 12.) The difference between the Districts' allegations over time may ultimately be used to cast doubt on the Districts' allegations, at trial or in another context in which evidence may be weighed against other evidence. But at the moment, the Districts have amended their Complaints, as allowed by Rule 15 of the Federal Rules of Civil Procedure, and it is the current version of the Complaints that must withstand or succumb to Defendants' motions to dismiss. Defendants point to no authority for rejecting outright an assertion of fact or a reasonable inference in an amended complaint at this stage on the grounds that it is different from a fact or inference in a previous complaint. Such a rule would make amendment under Rule 15 meaningless. It is simply not the role of the Court at this stage of the litigation to compare allegations in the operative complaint to other factual information. *See* Fed. R. Civ. P. 12(d).

In summary, the Districts have alleged that the Defendants underbilled 911 Charges and then falsely reported to the Districts that they were billing correctly. The Districts have not alleged the exact method by which the underbillings took place, or on what incorrect principle the

Defendants decided how to underbill, but those specifics are not necessary to move the Complaints beyond merely implying a possibility of misconduct by Defendants. The Complaints contain factual content sufficient to allow the Court to draw a reasonable inference that Defendants are liable to the Districts under causes of actions that rely on underbilling.[11]

### B. Pleading Fraud with Specificity

In the alternative, Defendants argue all of the fraud-related claims, Counts I, IV, V, and VI, must be dismissed for failure to plead fraud with sufficient particularity. Because the Court will dismiss the common-law fraud claims, Counts IV, V, and VI, for the reasons discussed in the following section, the Court need only address Count I, the Districts' TFCA claims, here.

A plaintiff must plead a claim of fraud or mistake with a greater level of specificity than other claims. Fed. R. Civ. P. 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* This heightened standard applies to claims under the TFCA. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). The purpose of the heightened standard is to provide fair notice to a defendant so the defendant may prepare an informed responsive pleading. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.*

Count I of each of the Complaints alleges a violation of the reverse-false-claims provision of the TFCA. (AT&T Compl. ¶¶ 64–73; Teleport Compl. ¶¶ 59–68; Level 3 Compl. ¶¶ 73–82.)

---

[11] As stated above, Defendants do not tailor their arguments to any of the specific causes of action.

This provision applies to any person who "[k]nowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision." Tenn. Code Ann. § 4-18-103(a)(7). In addition to incorporating the preceding allegations, some of which were discussed above, Count I of each Complaint alleges from at least December 1, 2004, forward, Defendants submitted monthly Reports falsely stating that Defendants had billed and collected all of the 911 Charges required by the 911 Law; that Defendants knew these statements were false; that the false statements were made to conceal, avoid, or decrease Defendants' obligations to transmit money to the Districts; and that Defendants had actual and present obligations to transmit money to the Districts at the times they made the false statements. (AT&T Compl. ¶¶ 64–72; Teleport Compl. ¶¶ 59–67; Level 3 Compl. ¶¶ 73–81.)

In the context of a *qui tam* action under the False Claims Act, U.S.C. § 3729,[12] Rule 9(b) requires a plaintiff to plead the following:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the [government], and (4) what the defendants obtained as a consequence of the fraud.

*Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)). In short, plaintiffs must allege the "'who, what, when where, and how" of the alleged fraud." *Id.* (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

---

[12] The Districts bring claims under the TFCA, not the federal False Claims Act, U.S.C. § 3729. While there are some differences between the text of the two acts, none of the parties argue that the requirements of Rule 9(b) differ as to the state and federal statutes.

Defendants argue the Complaints do not plead the "how" of the alleged fraud, in that they do not identify specific services for which, or specific circumstances under which, Defendants underbilled. The Districts have, however, sufficiently pleaded the "how" of the fraudulent scheme under Rule 9(b). The Districts have not alleged how Defendants committed *underbillings*, in the sense of alleging on what method or theory the underbillings were made. But they have alleged how Defendants committed *fraud*, in that they have alleged that Defendants made false certifications of compliance with the 911 Law in the monthly Reports, beginning no later than December 2004, that these statements misled the Districts into thinking the Districts were receiving all the remittances to which the 911 Law entitled them, and that Defendants obtained a competitive advantage by lulling the Districts into allowing Defendants not to charge their customers all of the 911 charges they should have.

As discussed in the preceding section, the Districts have also made specific allegations as to at least one example of the discrepancy between each Defendant's monthly Report of lines to each District and the number of lines reported in other documents.[13] While, as discussed above, these discrepancies may turn out not to be factually significant, they are sufficient to state a claim under the TFCA.

---

[13] AT&T also argues the allegations of fraud against it are not sufficient because the allegations about the number of lines in the ALI Database for the monthly examples are alleged "on information and belief." AT&T relies on *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439 (6th Cir. 2008) for the proposition that allegations on information and belief are insufficient to plead fraud with particularity. But *Marlar* does not establish a *per se* rule that pleading the content of one category of reports specifically but on information and belief is insufficient to support a fraud claim. In *Marlar*, although the relator alleged certain documents underreported the treatment of work-related injuries at a nuclear facility, the relator had no personal knowledge that any false information was ever presented to the government, and alleged that presentment only on information and belief. In addition, the relator in that case did not make specific allegations even as to the facts that were allegedly within her own knowledge.

C.  **Exclusivity of Statutory Remedy**

Defendants also argue in the alternative that all of the Districts' common-law claims, Counts III, IV, V, and VI, must be dismissed because the 911 Law establishes new and exclusive rights and remedies under Tennessee law. The Districts respond that Tennessee's exclusive-remedy rule does not apply where, as here, a new cause of action is implied, rather than express.

Under Tennessee law, "where [a] statute creates a new right and prescribes the remedy for its enforcement, the remedy prescribed is exclusive." *Turner v. Harris*, 281 S.W.2d 661, 665 (Tenn. 1955) (quoting *Sutherland on Statutory Construction*, Vol. 3, § 5812). For example, a borrower's remedies for loan charges and interest rates that violated the Industrial Loan and Thrift Company Act of 1979, Tenn. Code Ann. §§ 45-5-101 *et seq.*, were held to be limited to the remedies prescribed in the statute, because the law "created new rights and remedies for borrowers with respect to interest rates above ten percent annually," and those rights did not exist at common law. *Hathaway v. First Family Fin. Servs., Inc.*, 1 S.W.3d 634, 641 (Tenn. 1999). Such statutory remedies are exclusive because, where the legislature of the state has enacted appropriate legislation regulating behavior and providing penalties and remedies for the public good, "it is not within the prerogative of the judiciary to provide additional remedies and safeguards." *Turner*, 281 S.W.2d at 665. In other words, where the legislature establishes a new right and remedy, "nothing may be read into a statute which is not within the manifest intention of the legislature as gathered from the act itself." *Id.* (quoting 50 Am. Jur. § 229).

If a common-law right already exists when a statutory remedy is created, however, the statutory remedy is cumulative, rather than exclusive, unless the statute expressly states otherwise. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992) (citing *Leach v. Rich*, 196 S.W. 138, 140 (Tenn. 1917)). In distinguishing between exclusive and cumulative remedies, courts

15

presume the Tennessee legislature "know[s] the state of the law on the subject under consideration at the time it enacts legislation." *Id.* (citing *Jenkins v. Loudon Cty.*, 736 S.W.2d 603, 608 (Tenn. 1987)). For example, the Tennessee legislature passed a law in 1986 requiring reinstatement and reimbursement of employees who were fired or discriminated against for serving on juries. *See* Tenn. Code Ann. § 22-4-108(f). The statutory remedies of reinstatement and reimbursement were held to be cumulative to the damages available in a common-law action for retaliatory discharge, because the Tennessee Supreme Court had recognized the tort of retaliatory discharge two years before the jury-service law was passed. *S.C. Toof*, 833 S.W.2d at 899.

Defendants argue the rights provided to the Districts in the 911 Law are new, as this Court has previously held. (AT&T Doc. 30 at 19; Level 3 Doc. 22 at 7–8 (both citing *BellSouth I*, 890 F. Supp. 2d at 881).) Defendants further argue that, as construed by the Court of Appeals for the Sixth Circuit, the 911 Law created a new statutory remedy to vindicate those new rights. (AT&T Doc. 30 at 19; Level 3 Doc. 22 at 8 (both citing *BellSouth II*, 852 F.3d at 531).) The Districts do not dispute either point.

Where the parties disagree is whether it makes a difference that the remedy in the 911 Law is implied, rather than express. The Districts point out that none of the cases on which Defendants rely involve an implied cause of action. Defendants respond that the Districts have not pointed to any case in which a remedy was held not to be exclusive under Tennessee law simply because it was implied. Thus, all parties agree that there is no case under Tennessee law explicitly addressing whether the exclusive-remedy rule applies to an implied cause of action.

The Court concludes that whether a cause of action is express or implied makes no difference to the exclusivity analysis. A cause of action that is not expressly created in a statute can only be implied under Tennessee law where "the legislature ***otherwise indicated an intention***

*to imply such a right* in the statute." *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010) (emphasis added). The Court of Appeals in *BellSouth II* framed its inquiry regarding the existence of a cause of action under the 911 Law as "whether the Tennessee legislature *intended* the Districts to have a private right of action against a service supplier . . . under the 911 Law." *BellSouth II*, 852 F.3d at 528 (emphasis added). The very rationale for the exclusivity rule is that, where the legislature has established a right and provided a remedy, a court may not create additional remedies. *See Turner*, 281 S.W.2d at 665. Implying a remedy is merely following, to the best of a court's ability, what it determines to have been the legislature's intention in the first place. Accordingly, the Court sees no room to distinguish between the exclusivity of a new express remedy and the exclusivity of a new implied one. The Districts' causes of action under the 911 Law are exclusive of any common-law actions to seek vindication of their rights under the 911 Law.

In seeking to avoid this result, the Districts point to an unreported decision out of the Northern District of Alabama in which the district court held that common law claims for violation of Alabama's 911 law were not duplicative of the statutory cause of action. *See Autauga Cty. Emergency Mgmt. Commc'n Dist. v. BellSouth Telecomms., LLC*, No. 2:15-cv-00765-SGC, 2016 WL 5848854, at *4 (N.D. Ala. Oct. 6, 2016). The *Autauga* court relied on the fact that the rule in Alabama is that "if a statute creates a new right, and provides a *specific* remedy, that remedy is exclusive." *Id.* (quoting *Janney v. Buell*, 55 Ala. 408, 410 (Ala. 1876)) (emphasis altered). The *Autauga* court was thus interpreting a different exclusivity rule than that which applies in Tennessee. Under the Alabama exclusivity rule, the *Autauga* court found the fact that Alabama's 911 law did not "include any description of the types of claims or damages available to the districts" to be significant. *Id.* It is not so under Tennessee law.

17

The Court also finds *Autaga* unpersuasive because of its reliance on the fact that two earlier cases in the district had allowed both statutory and common-law causes of action to proceed in 911-law cases. *Id.* (citing *Madison Cty. Commc'ns Dist. v. BellSouth Telecomms., Inc.*, No. 06-1786-CLS, 2009 WL 9087783 (N.D. Ala. Mar. 31, 2009) and *Madison Cty. Commc'ns Dist. v. MagicJack Vocaltec, Ltd.*, No. 12-J-1922-NE, 2012 WL 12925761 (N.D. Ala. Oct. 23, 2012)). Those two earlier decisions, however, did not even discuss an exclusivity argument. The Court therefore does not find those cases, or *Autauga*, helpful to interpreting Tennessee law.

The Court will **DISMISS** the Districts' common-law claims for breach of fiduciary duty (Count III), fraudulent misrepresentation (Count IV), fraudulent concealment (Count V), and negligent misrepresentation (Count VI).

## IV. CONCLUSION

The Court will **GRANT IN PART AND DENY IN PART** Defendants' motions to dismiss (Doc. 29 in Case 370; Doc. 28 in Case 371; Doc. 21 in Case 376). Defendants' motions will be **GRANTED** as to the Districts' common-law claims, and the Districts' claims for breach of fiduciary duty, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation will be **DISMISSED**. Defendants' motions will be **DENIED** as to the Districts' claims under the TFCA and the 911 Law.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**